Filed 2/15/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF
CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>BENITO CORTES,<br><br>    Defendant and Appellant. | B312185<br><br>(Los Angeles County<br>Super. Ct. No. NA064923) |


    APPEAL from an order of the Superior Court of Los
Angeles County, Richard M. Goul, Judge. Affirmed.
    Eric R. Larson, under appointment by the Court of Appeal,
for Defendant and Appellant.
    Rob Bonta, Attorney General, Lance E. Winters, Chief
Assistant Attorney General, Susan Sullivan Pithey, Senior
Assistant Attorney General, Amanda V. Lopez and Stephanie A.
Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2007, defendant and appellant Benito Cortes was convicted of one count of first degree murder and one count of premeditated attempted murder.  In 2020, Cortes filed a petition pursuant to Senate Bill No. 1437 (Senate Bill 1437) and Penal Code section 1170.95,[1] which provide for vacatur of a murder conviction obtained under the natural and probable consequences doctrine, and resentencing.  Cortes appeals the trial court's order denying his petition on the basis that Cortes failed to make a prima facie showing of entitlement to relief.

We affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

### *The Shootings*

At approximately 4:15 p.m. on February 9, 2005, witnesses saw Cortes driving his car past a liquor store with three male passengers.  The car stopped and between four and five gunshots were fired, killing the victim but missing his companion.  One witness saw two Latino men commit the shooting.  The witness was unable to identify Cortes in a line-up, but at trial the witness stated that Cortes looked like one of the shooters.  Evidence was presented that the shooting was gang-related.  (*People v. Cortes* (Jun. 17, 2009, B206770) [nonpub. opn.].)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

### *Trial and Direct Appeal*

At trial, the jury was instructed that it could find Cortes guilty of murder as a direct perpetrator or as a direct aider and abettor.  The trial court did not instruct on felony murder or the natural and probable consequences doctrine.

In closing argument, the prosecutor told the jury it could find Cortes guilty either as a direct aider and abettor or as a perpetrator.  With respect to aiding and abetting, the prosecutor argued:

"There were several people that were part of this incident, defendant Cortes being one of them.  And the law is going to instruct you on principals.

"Now, I wasn't there.  And often we have incidents where if we do have any witnesses to an incident, witnesses see different things, as you know and are aware.  They see it from different positions.  But you may have incidents where witnesses don't see everything or witnesses aren't inside the car when things are happening prior to shootings.  Principals.  So, therefore, you just don't know exactly -- or the evidence won't show exactly who did what when.  An aider and abettor is considered to be a principal. *One who aids and abets is not only guilty of that particular crime in which that person aided and abetted but is also guilty of any crimes committed by a principal which are the natural and probable consequences of the crimes originally aided and abetted.* That is principals.  Talks [*sic*] about this aiding and abetting.

"The law goes further to define aiding and abetting.  A person who aids and abets the commission of a crime -- that's done when they have the knowledge of the unlawful purpose of the perpetrator.  With the intent or purpose of committing,

3

encouraging, facilitating the commission of the crime by act or advice, aids, promotes or encourages or instigates the commission of the crime.

"Common example used is the getaway driver in a bank robbery. I jump in my car, and I throw a couple of my buddies in the car with me. Three or four pile in the car. I drive down the street to the local Wells Fargo. We have our bandanas, guns. Several people with me. Kind of divvy out who is responsible for what. I'm just going to be the getaway driver. I'm going to use my car. I'm going to get those folks over to Wells Fargo. They are going to go in and do their thing and come out. And hopefully everything will work out great. And we jump on the 710 and out of here, and no one knows the difference, and no one catches us.

"Our laws take that into consideration. And aiding and abetting does not mean I get a free ride because I did not break that threshold and go inside that Wells Fargo. I did not take a gun or have a gun and walk up and stick up the teller. I did not grab the money inside the branch and carry it out to the car. All I did is I sat in that car, and I was aiding. I was certainly assisting both by bringing these individuals to the Wells Fargo and then getting them out of there before hopefully we get caught.

"I can use all kinds of examples. The fact is that you can go and assist and do a murder and an attempted murder, and you don't even have to touch the gun. You don't even have to be the trigger puller. You don't even need to be there. The law will tell you can still be a principal and still be held just as responsible under the aiding and abetting theory. You are a principal or a participant and met the criteria. If you have the knowledge of the unlawful purpose, and it was with the intent or purpose of

4

committing or encouraging or facilitating, helping in the commission of the crime by act or advice or aids, promotes, encourages, you are guilty of the same crimes.

"Now, whether the defendant Cortes got out of his car and actually was one of the shooters, whether he just stayed in his car, whether he ran to the bathroom or not or drove in his car and got out of there after, none of that really matters.  Based on the evidence of this case and what happened, it is clear that defendant Cortes was in his car.  It is clear that he was seen by witnesses with other individuals.  People see what is going on in the car as far as the bandanas." (Italics added.)

The jury found Cortes guilty of one count of first degree murder (§ 187, subd. (a) [count 1]) and one count of premeditated attempted murder (§§ 664/187, subd. (a) [count 2]).  The jury further found true as to count 1 that a principal discharged a firearm causing great bodily injury and death (§ 12022.53, subds. (b)–(d) & (e)(1)), and found true as to count 2 that a principal used and discharged a firearm (§ 12022.53, subds. (b), (c) & (e)(1)).  The jury found true gang allegations as to both counts. (§ 186.22, subd. (b).)

Cortes was sentenced to 50 years to life plus 10 years in count 1 and a consecutive term of life plus 30 years in count 2.  On direct appeal, Cortes challenged the sufficiency of evidence upon which the jury convicted him of the gang enhancements and the imposition of firearms enhancements based on gang enhancements, as well as matters relating to his sentence.  The Court of Appeal made certain sentencing modifications but otherwise affirmed the trial court's judgment.  (*People v. Cortes*, *supra*, B206770 [nonpub. opn.].)

### *Section 1170.95 Petition*

Cortes filed a petition for resentencing under section 1170.95 on March 9, 2020.

On July 21, 2020, the People responded to the petition, arguing that Cortes was not eligible for relief because the jury was not instructed on felony murder or the natural and probable consequences theory of liability for murder. The People attached the prior appellate opinion, the verdicts, and the instructions given by the trial court.

On October 22, 2020, Cortes's appointed counsel filed a reply to the People's response. Cortes contended that he was never identified as the actual shooter, and the jury was instructed on aiding and abetting, which allowed it to "impute" malice to him without making a finding that Cortes personally harbored malice. Additionally, the prosecutor relied on the natural and probable consequences doctrine in closing argument. Nothing in the record conclusively established that Cortes had the intent to kill.

At a hearing on eligibility on April 20, 2021, the court found Cortes ineligible for resentencing, stating that the conviction was based on an implied malice theory of liability for murder. The court relied heavily on the appellate court's opinion, which it characterized as focusing on the fact that Cortes had the specific intent to advance the cause of the gang to which he belonged, and "murder and attempted murder are targets which are the purpose of a gang." Based on the law and evidence presented, the court found Cortes "could have been, was indeed convicted under the implied malice theory which is still valid."

6

# DISCUSSION

Cortes contends that he made a prima facie case of entitlement for resentencing. He argues that, although the jury was not instructed on the natural and probable consequences theory of murder, it may have convicted him under that theory because the prosecutor mentioned the natural and probable consequences doctrine in closing argument. Cortes asserts that the prosecutor's closing arguments were "equally applicable to appellant having the knowledge and intent to aid and abet in an assault with a firearm the natural and probable consequence of which was his confederate's commission of the murder and attempted murder." Cortes contends that section 1170.95 and the amendments to sections 188 and 189 effected by Senate Bill No. 775 (Stats. 2021, ch. 551, §§ 1–2) (Senate Bill 775), which was enacted while his appeal was pending, apply to his attempted murder conviction as well as his murder conviction.

The People argue that the trial court properly denied Cortes's petition on the basis that he failed to make a prima facie showing of eligibility. Cortes could not demonstrate that he was convicted of either murder or attempted murder under the natural and probable consequences doctrine because the jury was not instructed on that theory of liability.

## Senate Bills 1437 and 775

Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the

7

intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1.) Senate Bill 775 became effective while this appeal was pending. The legislation modifies section 1170.95 to clarify "that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories." (Stats. 2021, ch. 551, § 1.)

Pursuant to amended section 1170.95, an offender must file a petition in the sentencing court averring that: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder[;] [¶] [and] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subds. (a)(1)–(3); see also § 1170.95 subd. (b)(1)(A).) Additionally, the petition shall state "[w]hether the petitioner requests the appointment of counsel." (§ 1170.95, subd. (b)(1)(C).)

"Upon receiving a petition in which the information required by this subdivision is set forth or a petition where any missing information can readily be ascertained by the court, if

8

the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner." (§ 1170.95, subd. (b)(3).) The prosecutor shall file a response within 60 days of the service of the petition, and the petitioner may file a reply within 30 days of the response. (§ 1170.95, subd. (c).) When briefing has been completed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Ibid*.) In determining whether a petitioner has made a prima facie showing of entitlement to relief, the trial court's inquiry will necessarily be informed by the record of conviction, which will facilitate the court in distinguishing "petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "If the petitioner makes a prima facie showing that [the petitioner] is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

*Analysis*

We conclude that Cortes failed to make a prima facie showing that he was entitled to relief because the record of conviction demonstrates that he was convicted of murder and attempted murder either as a perpetrator or a direct aider and abettor, and not under the natural and probable consequences doctrine, or indeed any theory under which malice is imputed to a person based solely on that person's participation in a crime. In so doing, we decline to address the trial court's reasons for denying the petition, as we may affirm a ruling that is correct in

law on any ground.[2]  (*People v. Turner* (2020) 10 Cal.5th 786, 807.)

As Cortes concedes, the jury was not instructed on any theory of liability for murder or attempted murder that required that malice be imputed to him.  He is therefore ineligible for resentencing under section 1170.95, subdivisions (a) and (b). Cortes attempts to circumvent this result by asserting that the prosecutor "argued" the natural and probable consequences theory at trial by stating: "One who aids and abets is not only guilty of that particular crime in which that person aided and abetted but is also guilty of any crimes committed by a principal which are the natural and probable consequences of the crimes originally aided and abetted."  Cortes argues that the other statements the prosecutor made in support of the direct aiding and abetting theory "were equally applicable to appellant having the knowledge and intent to aid and abet in an assault with a firearm the natural and probable consequence of which was his confederate's commission of the murder and attempted murder." Cortes overlooks the fact that the prosecution did not argue at any point during trial, including closing argument, that a crime other than murder or attempted murder was committed, and no other crime was charged or at issue throughout the trial.  In particular, the prosecution did not allege that Cortes aided and abetted an assault with a deadly weapon, and therefore we find

_____

[2] Cortes also argues that the trial court erred in concluding that he failed to make a prima facie case for relief, because the court relied on the jury's gang enhancement findings, which were not relevant, and employed an incorrect legal standard.  In light of our resolution of the matter, we need not address the propriety of the trial court's reasoning.

no merit in Cortes's suggestion that the jury may have, without instruction, relied on such a charge. At the very least, the evidence presented and arguments made might support that Cortes aided and abetted a shooting and acted with *implied* malice—a theory of murder that is still valid. (*People v. Gentile* (2020) 10 Cal.5th 830, 850 ["notwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life"]; *People v. Rivera* (2021) 62 Cal.App.5th 217, 232 [implied malice remains valid theory of second degree murder].)

Moreover, we presume a jury understands and follows the court's instructions, and "treat[s] the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate . . . .' [Citation.]" (*People v. Cortez* (2016) 63 Cal.4th 101, 131.) Here, the trial court advised the jury that counsel's arguments were not evidence (CALJIC No. 1.02), and that the jury was to follow the instructions given by the court even if counsel's comments conflicted with those instructions or the jury disagreed with the court's instructions (CALJIC No. 1.00). The court then instructed the jurors that they could find Cortes guilty of murder and attempted murder under only two theories: that he was a direct perpetrator or that he was a direct aider and abettor of the crimes. The prosecutor made a single comment on a legal theory in closing that was not presented in the case. Nothing in the charges, the instructions, or the balance of the trial permitted the jury to find Cortes guilty on a theory other than direct aiding and abetting or liability as a

11

perpetrator of murder and attempted murder. There is no indication in the record to suggest that the jury did not, in fact, follow the court's instructions. Cortes's mere speculation that the jurors convicted him of murder and attempted murder because he committed some other unidentified and uncharged crime, contrary to the trial court's instructions, does not overcome the presumption that the jury properly performed its duty. (*People v. Williams* (2015) 61 Cal.4th 1244, 1279 [speculation insufficient to overcome presumption that jury followed court's instructions]; see also *People v. Johnson* (2015) 61 Cal.4th 734, 770 [where nothing in the record suggested that the jury did not follow court's instructions, presumption that the jury followed instructions is not overcome].) Because the record of conviction demonstrates that Cortes was not convicted on a theory of vicarious liability, he has failed to meet his burden of making a prima facie showing of entitlement to relief under section 1170.95.

## DISPOSITION

The trial court's order denying Cortes's section 1170.95 petition for resentencing is affirmed.


MOOR, J.

We concur:



RUBIN, P.J.        BAKER, J.


12